UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,   CASE NO.: 00-6176-CR-ZLOCH

vs.

ANNETTE GONZALEZ,
Defendant.
_____/

### DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

Ms. Gonzalez, through undersigned counsel, files the following objections to the presentence investigation report (hereinafter "PIR") that was prepared in the present case and in support thereof states the following:

1. The Offense Level Computation that is contained on pages 11 and 12 of the PIR decreases Ms. Gonzalez' sentencing guidelines by two levels on the ground that she was a *minor* participant pursuant to United States Sentencing Guidelines (hereinafter "U.S.S.G.") § 3B1.2(b). However, the sentencing guidelines should be reduced by four levels because Ms. Gonzalez was actually a *minimal* participant pursuant to U.S.S.G. § 3B1.2(a). Application note # 1 of U.S.S.G. § 3B1.2 states that "[s]ubsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."

Ms. Gonzalez is far, far less culpable than codefendants Mark Cohen, Eric Silverman, Bruce Hollander, Kenneth Heyder, Jean Lindor, Jean Dufralessi, Paul Saltz,

1

Christie Galluci, Lee Garber, and Kenneth Duquette. Ms. Gonzalez submits that this group of codefendants should be categorized in the following manner:

(1) MARK COHEN: LEADER insofar as he

    (a) was involved in the entire conspiracy;

    (b) coordinated, organized, and formulated the entire scheme;

    (c) recruited and supervised others in the conspiracy;

    (d) the monetary loss attributable to this defendant is in excess of one million dollars.

(2) ERIC SILVERMAN: LEADER insofar as he

    (a) assisted in organizing and implementing the entire scheme with Mark Cohen;

    (b) split all profits with Mark Cohen;

    (c) prepared false documents in furtherance of the scheme;

    (d) supervised individuals who took part in the scheme;

    (e) the monetary loss attributable to this defendant is in excess of one million dollars.

(3) BRUCE HOLLANDER: ONE LEVEL BELOW THE LEADERS insofar as he

    (a) provided/prepared false documents in furtherance of the scheme;

    (b) provided title policies on the subject real estate;

    (c) was paid $1,000.00 per real estate closing in addition to being on a monthly retainer with the leaders;

(d) his actions allowed the concealment of the immediate resale and inflated price of the homes from lenders, this being integral to the success of the scheme.

(4) KENNETH HEYDER: ONE LEVEL BELOW THE LEADERS insofar as he

(a) provided/prepared false documents in furtherance of the scheme;

(b) supervised and managed others in the conspiracy;

(c) his actions allowed the concealment of the immediate resale and inflated price of the homes from lenders, this being integral to the success of the scheme.

(5) JEAN LINDOR: TWO LEVELS BELOW THE LEADERS insofar as he

(a) referred potential borrowers to Mark Cohen and Eric Silverman, the leaders of the scheme;

(b) created false documents to facilitate illegal transactions;

(c) assisted transactions with gift money to the banks;

(d) supervised other individuals who created false documents, including some who were not indicted.

(6) JEAN DUFRALESSI: THREE LEVELS BELOW THE LEADERS insofar as he

(a) prepared false employment records;

(b) arranged to have persons act as borrowers;

(c) purchased cashiers checks for use in the fraudulent transactions.

(7) PAUL SALTZ: FOUR LEVELS BELOW THE LEADERS insofar as he

(a) prepared false documents and pay stubs for use in the scheme;

(b) prepared false documents for 100 transactions.

3

(8) CHRISTIE GALLUCI: FOUR LEVELS BELOW THE LEADERS insofar as she

    (a) assisted Mark Cohen in preparing false documents that facilitated the scheme.

(9) LEE GARBER: FOUR LEVELS BELOW THE LEADERS insofar as he

    (a) interviewed potential borrowers for the scheme;

    (b) assisted in filling out forms used in the scheme;

    (c) participated in numerous real estate closings in furtherance of the scheme.

(10) KENNETH DUQUETTE: FIVE LEVELS BELOW THE LEADERS insofar as he

    (a) handled closings in furtherance of the scheme.

(11) ANNETTE GONZALEZ: SIX LEVELS BELOW THE LEADERS insofar as she

    (a) ordered title searches, typed title commitments and escrow letters, coordinated loan payoffs, and ordered surveys *solely* at the direction of her superiors, Kenneth Heyder and Marti McKay.

The fact that Ms. Gonzalez was among the least culpable of those involved in the scheme supports a four-level reduction as a minimal participant. *See U.S. v. Moeller*, 80 F.3d 1053, 1063 (5th Cir. 1996) (minimal role reduction upheld where defendant plainly had an inadequate understanding of bribery scheme as compared to his superiors); *U.S. v. Petti*, 973 F.2d 1441, 1446-48 (9th Cir. 1992) (minimal role reduction upheld even though defendant performed critical functions as member of conspiracy, where defendant was

not involved in actual "smurfing" of money into banks and was not privy to all mechanics of money laundering operation and his role was subordinate to that of coparticipants); *U.S. v. Westerman,* 973 F.2d 1422, 1428 (8th Cir. 1992) (district court erred in finding defendant to be a minor participant rather than a minimal participant where the record showed that defendant knew nothing about an insurance fraud scheme, he knew nothing about unsuccessful prior arson attempts or a false burglary claim, and he was not involved in any planning).[1]

2. In paragraph # 12 on page 11 of the PIR, the offense level is increased by two levels based upon U.S.S.G. § 2F1.1(b)(2) which states that "[i]f the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, increase by 2 levels." Ms. Gonzalez relies upon her argument above in paragraph # 1 to demonstrate that her involvement in the instant offense did not involve more than minimal planning.

Regarding the issue of whether Ms. Gonzalez' offense involved a scheme to defraud more than one victim, application note # 4 of U.S.S.G. § 2F1.1 states that:

> "Scheme to defraud more than one victim," as used in subsection (b)(2)(B), refers to a design or plan to obtain something of value from more than one person. In this context, "victim" refers to the person or entity from which the funds are to come directly. Thus, a wire fraud in which a single telephone call was made to three distinct individuals to get each of them to invest in a pyramid scheme would involve a scheme to defraud more than one victim, but passing a fraudulently endorsed check would not, even though the maker, payee and/or payor all might be considered victims for other purposes, such as restitution.

---

[1] If the Court determines that Ms. Gonzalez' role in the present offense was more than minimal but less than minor, the Court should decrease the sentencing guidelines by 3 levels pursuant to U.S.S.G. § 3B1.2.

In the present case, there is *one* victim, that being the United States Department of Housing and Urban Development. Paragraph # 1 of the plea agreement that Ms. Gonzalez entered into states that "[t]he defendant agrees to plead guilty to the information, which charges the defendant with making false statements to the Department of Housing and Urban Development in violation of Title 18, United States Code, sections 1010 and 2." Paragraph # 38 on page 10 of the PIR states that the victim in this case is the Department of Housing and Urban Development. And paragraph # 60 on page 19 of the PIR refers to that same department as being the victim of the present offense and requests that the Court order restitution to be paid *only* to this entity. Thus, it certainly appears that Ms. Gonzalez' activity is analogous to passing a fraudulently endorsed check which constitutes a scheme to defraud *one* victim as stated above in application note # 4 of U.S.S.G. § 2F1.1.

Paragraph # 12 on page 11 of the PIR states in relevant part that "[t]he instant offense involved loans which were secured through numerous fraudulent and deceptive acts. In addition to HUD, many of the banks, and ultimately the borrowers, were also affected financially by this scheme." To paraphrase application note # 4 of U.S.S.G. § 2F1.1, the banks and borrowers referred to may be considered victims for other purposes, but they should not be considered victims for the purpose of U.S.S.G. § 2F1.1. *See also U.S. v. Maurello,* 76 F.3d 1304, 1313 (3rd Cir. 1996) (the loss from defendant's fraud is not measured by the loss to those who are not direct victims of defendant's conduct).

3. Paragraph # 27 on page 13 of the PIR correctly states that Ms. Gonzalez is married to coconspirator Kenneth Duquette and that they have a daughter who is 18

6

months old. The PIR also states in this same paragraph that both Ms. Gonzalez and her husband expressed concern for their daughter if either parent is incarcerated.

U.S.S.G. § 5H1.6 allows the court, under extraordinary circumstances, to consider family ties and responsibilities as the basis for a downward departure on the sentencing guidelines. As a result, several courts have stated that it is appropriate, under certain circumstances, for a district court to depart downward on the sentencing guidelines due to a defendant's unique family responsibilities. *See U.S. v. Gauvin*, 173 F.3d 798 (10th Cir. 1999) (downward departure affirmed where defendant's wife was at risk of losing her children, her automobile, and her two jobs because of defendant's incarceration); *U.S. v. Owens*, 145 F.3d 923 (7th Cir. 1998) (downward departure affirmed for family circumstances even though the facts were not "compelling"); *U.S. v. Sclamo*, 997 F.2d 970 (1st Cir. 1993) (downward departure upheld where there existed an exceptional kind of family relationship and an exceptional risk of harm to a child if that relationship were broken); *U.S. v. Pena*, 930 F.2d 1486, 1494-96 (10th Cir. 1991) (court upheld district court's decision to depart from offense level of 18 to offense level of 10 due to aberrational character of defendant's conduct combined with her responsibility to support two infants); *U.S. v. DeRiggi*, 893 F.Supp. 171, 182 (E.D.N.Y. 1995) (needs of family members are an established ground for departure); *U.S. v. Gerard*, 782 F.Supp. 913, 914 (S.D.N.Y. 1992) (downward departure upheld where defendant was sole provider for two children).

In *U.S. v. Spedden*, 917 F.Supp. 404 (E.D. Va. 1996), the district court departed downward on the sentencing guidelines due to financial and medical hardships within the defendant's family. In support of its position, the court stated that:

7

> There are many examples of extraordinary situations where district court departures have withstood attack and been affirmed on appeal on facts less compelling than the case at bar. *See e.g.. United States v. One Star*, 9 F.3d 60, 61 (8th Cir. 1993) (combination of factors for Indian defendant—strong family ties, employment record, community support); *United States v. Johnson*, 964 F.2d 124, 128—30 (2d Cir. 1992) (sole responsibility for raising four young children); *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991) (12-year marriage, two children, living with disabled, dependent father and grandmother); and *United States v. Pena*, 930 F.2d 1486, 1494-95 (9th Cir. 1991) (single parent of infant and sole supporter of 16-year-old daughter and daughter's infant).

*Spedden*, 917 F.Supp. at 408.

4. Paragraph # 22 on page 12 of the PIR correctly states that Ms. Gonzalez has no criminal history points. That being the case, this court has the discretion to depart downward on the sentencing guidelines due to the aberrant behavior exhibited by Ms. Gonzalez in this case even though her aberrant behavior extended from January 28, 1997 to May 12, 1997.

In *U.S. v. Kalb*, 105 F.3d 426, 429 (8th Cir. 1997), the court stated:

[O]ur prior cases suggest that the only "aberrant behavior" which may be *considered* for departure purposes is the "single act of aberrant behavior" mentioned in the introductory comment about probation and split sentences. *But see United States v. Simpson*, 7 F.3d 813, 820 (8th Cir. 1993) (more than one act might "qualify as aberrant behavior warranting a departure.")  However, the Guidelines "place essentially no limit on the number of potential factors that may warrant departure" [quoting *Koon v. United States*, 116 S. Ct. 2035, 2050 (1996)]. The [Sentencing] Commission's introductory comment about single acts of aberrant behavior does not appear in its general discussion of departures. In that discussion, the Commission specifically states that it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S.S.G. Ch. 1, Pt. A, intro.

comment. (4)(b). Thus, under *Koon*, "aberrant behavior" in general is an unmentioned factor, and the task for the sentencing court is to analyze how and why specific conduct is allegedly aberrant, and whether the Guidelines adequately take into account aspects of defendant's conduct that are in fact aberrant.

5. Even if the court does not believe that Ms. Gonzalez' family circumstances or aberrant behavior *individually* justifies a downward departure on the sentencing guidelines, such a departure is appropriate when these factors are considered together. *See U.S. v. Blackwell*, 897 F.Supp. 586, 588-89 (D.D.C. 1995) (although defendant's diminished capacity, family circumstances, and aberrant behavior did not individually justify a downward departure, such a departure was warranted when these same factors were considered together). Accordingly, Ms. Gonzalez requests that the court depart downward on the guidelines and sentence her to probation.

6. Paragraph # 3 on page 4 of the PIR states in relevant part that Ms. Gonzalez was involved in obtaining 17 loans by providing materially false statements. However, Ms. Gonzalez was actually involved in obtaining 16 loans by providing materially false statements. In fact, paragraph # 36 on page 10 of the PIR correctly states that Ms. Gonzalez was involved in obtaining 16 loans by providing materially false statements.

7. Paragraph # 31 on page 14 of the PIR correctly states that Ms. Gonzalez began drinking wine on an occasional basis when she was 19 years of age. However, when she turned 19, she was living in Puerto Rico, and it was legal there to consume alcohol beginning at the age of 18.

8. Paragraph # 42 on page 15 of the PIR contains a section entitled "Assets and Liabilities Summary." Following this summary, the PIR states that "[b]ased on the

defendant's present financial situation, it does not appear she will have the ability to pay a Court-ordered fine in addition to any restitution imposed in this matter." Paragraph # 50 on page 17 of the PIR. Ms. Gonzalez agrees with this assessment, particularly in light of the fact that restitution is owed to the Department of Housing and Urban Development in the amount of $265,896.98. *See* paragraph # 60 on page 19 of the PIR. *See also* U.S.S.G. § 5E1.2(a) ("[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine").

Ronald S. Chapman
Counsel for Defendant

### CERTIFICATE OF SERVICE

I do certify that a copy hereof has been furnished to the following individuals by fax this 30th day of October, 2000:

Assistant United States Attorney Jeffrey Kaplan
Office of the United States Attorney
500 Broward Blvd., Suite 700
Ft. Lauderdale, FL 33394

10

Ms. Sheila E. Tierney
U.S. Probation Officer
501 South Flagler Dr.
Room 400
West Palm Beach, FL 33401-5912

*Ronald S. Chapman*
Ronald S. Chapman
Fla. Bar No. 0898139
Via Jardin, Suite 217
330 Clematis Street
West Palm Beach, FL 33401
Tel (561) 832-4348
Fax (561) 835-9061

11